# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM THOMAS COATS, | Case No. 1:13-cv-02032-AWI-BAM (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION TO DISMISS |
| v. | |
| CHAUDHRI, et al., | (ECF No. 92) |
| Defendants. | **FOURTEEN (14) DAY DEADLINE** |

**I.     Introduction**

Plaintiff William Thomas Coats ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action under 42 U.S.C. § 1983. This action currently proceeds on Plaintiff's first amended complaint against Defendants Fairchild, Gundran, Gladden, Nguyen, and Convalecer for deliberate indifference to serious medical needs in violation of the Eighth Amendment and for state law claims of medical negligence and medical malpractice.

On December 6, 2018, Defendants filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). By this motion, Defendants seek to dismiss this action on the grounds that Plaintiff has failed to exhaust his administrative remedies and has failed to state facts sufficient to establish a cause of action against each of the Defendants for deliberate indifference to serious medical need, medical negligence, and medical malpractice. (ECF No. 92.) On December 26, 2018, Plaintiff opposed the motion. (ECF No. 93.) Defendants filed a reply on

1

January 3, 2019. (ECF No. 94.) The motion is deemed submitted. Local Rule 230(l).

## II. Legal Standards

### A. Motion to Dismiss Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim, and dismissal is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quotation marks and citations omitted). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (quotation marks omitted); *Conservation Force*, 646 F.3d at 1242; *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The Court must accept the well-pled factual allegations as true and draw all reasonable inferences in favor of the non-moving party. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007); *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 996–97 (9th Cir. 2006). Further, prisoners proceeding *pro se* in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).

### B. Exhaustion of Administrative Remedies Standard

#### 1. Statutory Exhaustion Requirement

Section 1997e(a) of the Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Prisoners are required to exhaust the available administrative remedies prior to filing suit. *Jones v. Bock*, 549 U.S. 199, 211 (2007); *McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir. 2002). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, *Booth v. Churner*, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

"[T]o properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,' [ ]—rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218 (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations. *Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010) (citing *Jones*, 549 U.S. at 218).

Defendants may raise exhaustion deficiencies as an affirmative defense under § 1997e(a) in either (1) a motion to dismiss pursuant to Rule 12(b)(6) or (2) a motion for summary judgment under Rule 56. *Albino v. Baca*, 747 F.3d 1162, 1168–69 (9th Cir. 2014). However, motions to dismiss under Rule 12(b)(6) are only appropriate "in those rare cases where a failure to exhaust is clear from the face of the complaint." *Id.* at 1169.

If the Court concludes that Plaintiff has failed to exhaust available remedies, the proper remedy is dismissal without prejudice of the portions of the complaint barred by § 1997e(a). *See Jones*, 549 U.S. at 223-24; *Lira v. Herrera*, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

### 2. California Department of Corrections and Rehabilitation ("CDCR") Administrative Remedy Process

The State of California provides its prisoners and parolees the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15 § 3084.1(a). The process is initiated by submitting a CDCR Form 602 ("602 form"). *Id.* at § 3084.2(a). Three levels of appeal are involved, including the first level, second level, and third level. *Id.* at § 3084.7. The third level of review exhausts administrative remedies. *Id.* at § 3084.7(d)(3).

In 2013, when Plaintiff was submitting the appeal at issue, the regulations required the prisoner to, among other things, "list all staff member(s) involved and ... describe their involvement in the issue"; "include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue"; and "state all facts known and available to him/her regarding the issue being appealed at the time of submitting the" CDCR

602. Cal. Code Regs., tit. 15 § 3084.2(a)(3)-(4); *see also Simmons v. Arnett*, No. 2:16-CV-02858-R-KES, 2019 WL 1744217, at *3 (C.D. Cal. Feb. 28, 2019) (identifying these regulations as applicable in 2013). In order to satisfy § 1997e(a), California state prisoners are required to use this process to exhaust their claims prior to filing suit. *Woodford*, 548 U.S. at 85; *McKinney*, 311 F.3d at 1199–1201.

### III. DISCUSSION

#### A. Summary of Plaintiff's First Amended Complaint[1]

Plaintiff is currently housed at Mule Creek State Prison in Ione, California. At the time of the events at issue, Plaintiff was housed at Corcoran State Prison in Corcoran, California.

Plaintiff alleges as follows: On May 9, 2013, Dr. M. Chaudhri performed a sonogram-guided biopsy of Plaintiff's liver. During the biopsy, Dr. Chaudhri allegedly stabbed Plaintiff's liver three times before he was able to extract a viable sample of Plaintiff's tissue. Plaintiff claims that all three tries were severely painful, and his blood curdling screams should have alerted Dr. Chaudhri that he was experiencing a major medical complication.

Defendants Fairchild and Gundran, both nurses, were present before, during and after the biopsy procedure, and allegedly witnessed Plaintiff's screams during the procedure, but did not intervene. Plaintiff alleges that he begged and pleaded with Defendant Fairchild during the biopsy procedure. Plaintiff also alleges that he complained to both Defendant Fairchild and Defendant Gundran of pain, dry heaves and bleeding, and insisted that something was wrong, but he was ignored. Plaintiff claims that he was bleeding severely from the hole in his side and he dry heaved when he was poked the third time. At some point, Plaintiff's pain level was graded 8 on a scale of 1-10 and he was dizzy and nauseous.

Unbeknownst to Plaintiff, during the procedure, Dr. Chaudhri punctured an artery in Plaintiff's liver. Plaintiff claims that all medical staff and personnel were deliberately indifferent to his internal bleeding, which continued for 20 hours during which Plaintiff experienced severe and excruciating pain. Plaintiff asserts that his cries for help were ignored by all of the medical

---
[1] Plaintiff's first amended complaint is disjointed, repetitive and not in chronological order. Accordingly, the Court has endeavored to provide a concise summary of Plaintiff's allegations.

4

doctors and nurses, including Defendants Gundran, Gladden, Nguyen and Convalecer.

When Plaintiff returned to the Facility Prison Yard from the hospital, he did not make it to his cell. Once he was on the B-Facility yard, he told the Building 5 tower guard that he was going medical "man down," an emergency medical distress that inmates use to alert correctional officers and medical staff that they are experiencing a medical issue or emergency. Plaintiff made it across the prison yard to the B-Yard medical clinic. A nursed noted that Plaintiff was pale and bleeding from the right side under the pressure bandage. Plaintiff told the nurse that he just had a liver biopsy, something was wrong, and he needed immediate help. Plaintiff stayed in the B-Yard clinic until escorted from the yard to the prison hospital.

At the prison hospital, Plaintiff was then placed in an inmate holding tank. After screaming several times, Defendant Gladden had a correctional officer unlock the holding cell to speak with Plaintiff. Plaintiff told Defendant Gladden that his pain was at level 10. Defendant Gladden asked for a wheelchair. When Plaintiff sat down in the chair, he cried out in pain. Defendant Gladden took Plaintiff to the main trauma triage room. Defendant Gladden later instructed Plaintiff to follow her to a smaller trauma room across the hall and then to a third trauma room, but before entering the third trauma room, Plaintiff was taken back to the observation cell where he screamed in pain and agony for 2-3 hours. Plaintiff was finally taken back to trauma-1, where Defendant Dr. Nguyen appeared with Plaintiff's health records. Defendant Dr. Nguyen asked Plaintiff what was going on and Plaintiff explained that he was in pain and agony from the liver biopsy procedure and something had gone very wrong. Defendant Dr. Nguyen reportedly never got closer to Plaintiff than the doorway, but prescribed Tylenol 3 with codeine and ordered that Plaintiff be returned to his prison cell, where Plaintiff allegedly writhed in pain and bled internally for the next 18 hours. Plaintiff eventually lost consciousness and his cellmate called man down.

Plaintiff was taken by ambulance "code 2" all the way to Mercy Hospital in Bakersfield, California. Plaintiff complains that Defendant Dr. Convalecer was indifferent to Plaintiff's need and should have life flighted him to Mercy Hospital, not sent him by ambulance with no lights or siren to the hospital, which was more than ½ hour away from the prison. After an emergency

5

room CAT scan, it was verified that Plaintiff had severe liver damage and a hole in the artery in his liver. Plaintiff contends that he required emergency surgery and embolization of the hole in his liver.

### B. Grievance Filed by Plaintiff re Liver Biopsy

In his first amended complaint filed on November 8, 2018, Plaintiff asserted that he filed an appeal or grievance concerning all of the facts contained in his complaint and that the process was complete. (ECF No. 89 at 6.) Plaintiff attached a copy of the underlying administrative appeal documents to his original complaint.[2] (ECF No. 1.) According to those documents, Plaintiff submitted a Patient/Inmate Health Care Appeal on May 28, 2013, in which he stated the subject/purpose of his appeal as a "BOTCHED LIVER BIOPSY THAT ALMOST RESULTED IN DEATH." (ECF No.1 at 16.) Plaintiff further alleged as follows:

> On May 9, 2013 I was escorted to the ACH Corcoran Prison Hospital to have (1) single liver biopsy performed on me. This did not happen[]. After being numbed a little Dr. Chaudhri then [illegible] my liver attempted to retrieve (1) liver biopsy. This did not happen. He immediately after stating to me that the first biopsy the only one I agreed too [sic] did not result in enough liver specimen without asking if I wanted to continue or try again, he had one of the assisting nurses hand him a second biopsy needle which he inserted in the puncture to my right side he had done from the first failed biopsy attempt. He pushed even harder the second time causing great pain and suffering to the patient William Coats as evidenced by Mr. Coats's loud screaming. When Dr. Chaudhri removed the second biopsy needle he stated he had done thousands of these and this never happened before but he had still not retrieve the proper amount of liver sample for the lab. So immediately called for a third liver biopsy needle, which he slid into my liver through the original puncture to my side and the greatest amount of force yet and loudest screams from the patient when he withdrew the third biopsy needle. He stated he successfully retreved [sic] enough sample. The patient on the other hand was in extreme pain and after less then [sic] 5 minutes Dr. Chaudhri stated the patient William Coats was not bleeding because he was looking at my liver. This in actuality turned out to be a blatant lie. Over the next 24 hours Mr. Coats bleed almost to death before he was transferred to an outside hospital in Bakersfield for emergency lifesaving surgery and repair to his severly

---

[2] Although generally the scope of review on a motion to dismiss for failure to state a claim is limited to the complaint, a court may consider evidence on which the complaint necessarily relies. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). Moreover, the Court may take judicial notice of its own files and records under Rule 201 of the Federal Rules of Evidence. *See, e.g.*, *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1034 (C.D. Cal. 2015) (granting plaintiff's request to have court take judicial notice of defendants' motion to dismiss).

>[sic] lascerated [sic] liver. I had to receive 5 pints of blood and I spent 2 full days in intensive care and 9 days total in the hospital. This was all to receive interferon & ribavirin for treatment of Hep-C. I never wanted this biopsy.

(*Id.* at 16, 18) (modified from uppercase).

Based on this issue, Plaintiff sought monetary compensation "for the pain and suffering caused by Dr. Sao . . . forcing me to have this liver biopsy and Dr. Chaudhri for almost ending my life over a simple medical procedure I only signed on for one liver biopsy not 3." (*Id.* at 18.)

### C. Analysis

Defendants argue that Plaintiff's sole appeal regarding the liver biopsy was limited to the procedure performed by Dr. Chaudhri, and Plaintiff did not name Defendants Fairchild, Gundran, Gladden, Nguyen, and Convalecer in the appeal nor allege any issues involving his post-procedure care or transportation to the emergency room. (ECF No. 92 at 8; 94 at 2.) In short, Defendants assert that the administrative appeal naming Drs. Chaudhri and Sao is not sufficient to exhaust the deliberate indifference claims against Defendants because the appeal fails to reference any of the alleged conduct identified in the First Amended Complaint. The Court agrees.

As indicated above, the level of detail in an administrative grievance necessary to properly exhaust a claim is determined by the prison's applicable grievance procedures. *Jones*, 549 U.S. at 218; *see Marella v. Terhune*, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'"). The California Code of Regulations at issue required that Plaintiff's CDCR Form 602 "list all staff member(s) involved and ... describe their involvement in the issue" and "include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue." Cal. Code Regs., tit. 15 § 3084.2(a)(3). Further, the regulations also required that Plaintiff "state all facts known and available to him/her regarding the issue being appealed at the time of submitting the" CDCR 602." Id. 3084.2(a)(4). An appeal generally "suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress." *Sapp*, 623 F.3d at 824.

Here, Plaintiff's allegations in the CDCR 602 appeal are insufficient to exhaust Plaintiff's

claim that the moving defendants were deliberately indifferent to a serious medical need following the allegedly botched liver biopsy performed by Dr. Chaudhri. In the appeal, Plaintiff attributes all fault to Dr. Chaudhri for the liver biopsy and mentions only purported misconduct by Dr. Chaudhri and Dr. Sao. Plaintiff does not identify Defendants Fairchild, Gundran, Gladden, Nguyen, and Convalecer or present any facts connecting these defendants to his complaint of misconduct against Drs. Chaudhri and Sao. Although Plaintiff mentions "assisting nurses" in his appeal, he does not attribute any misconduct to them, either through action or inaction. He also does not mention any facts "known and available to him" regarding post-procedure interactions with any doctors or nurses, including Defendants Fairchild, Gundran, Gladden, Nguyen, and Convalecer.[3] There also is no mention of any visit to the B-Yard clinic, no mention of his return to the prison hospital, and no mention of his objection to the form of transportation to Mercy Hospital.

The Court therefore finds that Plaintiff did not provide the prison with sufficient notice to correct any alleged wrongdoing on the parts of Defendant Fairchild, Gundran, Gladden, Nguyen, and Convalecer and did not "provide the level of detail required by the prison's regulations." *Sapp*, 623 F.3d at 824; *see also Brookins v. Hernandez*, 1:17-cv-01675-AWI-SAB (PC), 2019 WL 4138609, at *5 (E.D. Cal. Aug. 30, 2019) (finding prisoner did not provide level of detail required by prison regulations where defendant was not identified in appeal or linked to conduct of other defendants who were identified in appeal); *Bealer v. Stinson*, No. 1:16-cv-00671-LJO-JDP, 2018 WL 6436247, at *6 (E.D. Cal. Dec. 7, 2018) (finding that omission of any mention of defendant or defendant's alleged conduct in the grievance, plaintiff failed to submit a grievance with the level of detail required for exhaustion by Cal. Code Regs. tit. 15, § 3084), report and recommendation adopted, No. 1:16-cv-00671-LJO-JDP, 2019 WL 358696 (E.D. Cal. Jan. 29, 2019), appeal dismissed, No. 19-15331, 2019 WL 4017425 (9th Cir. July 25, 2019).

---

[3] In his opposition, Plaintiff asserts that he "did not Fail To Exhaust A 602 inmate Appeal Filed Against Dr. Chaudhri ET Al. All The way to The Director's Level of Review (which was Denied)." (ECF No. 93 at 3.) However, Plaintiff does not explain how his appeal exhausted any claims against Defendants Fairchild, Gundran, Gladden, Nguyen, and Convalecer. Rather, Plaintiff merely expands on the factual allegations contained in his First Amended Complaint and makes a conclusory assertion that his administrative remedies were exhausted in 2013.

Accordingly, the Court finds that Plaintiff has failed to exhaust his administrative remedies as to the federal claims against Defendants Fairchild, Gundran, Gladden, Nguyen, and Convalecer and those claims should be dismissed. Given this determination, the Court finds it unnecessary to reach Defendants' alternative argument that Plaintiff's First Amended Complaint fails to state a claim for deliberate indifference to serious medical need in violation of the Eighth Amendment against them.

**IV.    State Law Claims**

The Court also finds it unnecessary to reach Defendants' arguments regarding Plaintiff's state law claims. Under 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," except as provided in subsections (b) and (c). The Supreme Court has stated that "if the federal claims are dismissed before trial, ... the state claims should be dismissed as well." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). As it is recommended that Plaintiff's federal law claims be dismissed for failure to exhaust administrative remedies, it also is recommended that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

**V.    Conclusion and Recommendation**

Based on the foregoing, IT IS HEREBY RECOMMENDED as follows:

1.    Defendants' motion to dismiss (ECF No. 92) be GRANTED as to Plaintiff's federal claims on the ground that Plaintiff failed to exhaust his administrative remedies; and

2.    The Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims against Defendants Gladden, Nguyen, Gundran, Convalecer, and Fairchild and those claims be dismissed without prejudice.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, under 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and

Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **September 6, 2019**　　　　　　　　/s/ *Barbara A. McAuliffe*
　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE